```
JB:TM:NMA
F.#2005R00060
```

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - -X

ANTHONY INDELICATO,

        Petitioner,

  - against -                                        09 CV 5228 (NGG)

UNITED STATES,

        Respondent.

- - - - - - - - - - - - - - - - - - - -X

GOVERNMENT'S OPPOSITION TO ANTHONY INDELICATO'S
<u>PETITION FOR A WRIT OF HABEAS CORPUS</u>

                                               BENTON J. CAMPBELL
                                               United States Attorney
                                               Eastern District of New York
                                               271 Cadman Plaza East
                                               Brooklyn, New York 11201

Taryn A. Merkl
Nicole M. Argentieri
Assistant U.S. Attorneys
    (Of Counsel)

TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . 1

PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    I.   Petitioner's Claims Are Procedurally Defaulted . . . 7

        A.   Legal Standard . . . . . . . . . . . . . . . . . 7

        B.   Analysis . . . . . . . . . . . . . . . . . . . . 8

    II.  Petitioner Waived His Right to Challenge Collaterally
        His Conviction Pursuant to His Plea Agreement . . . 10

        A.   Applicable Plea Agreement Provisions . . . . . 10

        B.   Analysis . . . . . . . . . . . . . . . . . . . . 10

    III. Petitioner is Not Entitled to Relief Due to the Non-
        Disclosure of the CW-1 Letter Because Petitioner's
        Plea Was Knowing and Voluntary . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

PRELIMINARY STATEMENT

  The government respectfully submits this memorandum of law in opposition to petitioner Anthony Indelicato's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. For the reasons stated below, the Court should dismiss the petition or, in the alternative, deny it in its entirety.

  Petitioner's primary argument in support of his application for a writ of habeas corpus is that the suppression of exculpatory evidence, namely, a letter pertaining to a government cooperating witness, caused his guilty plea to be involuntary, while also causing Fifth and Sixth Amendment violations. As discussed further below, petitioner has procedurally defaulted on all of his claims. Moreover, even if petitioner's claims were preserved, they should be denied on their merits. First, pursuant to the terms of his plea agreement, petitioner knowingly waived his right to collaterally challenge his conviction and sentence. Second, the allegedly suppressed evidence was cumulative of information provided to Indelicato prior to his entry of a guilty plea. Third, the record clearly establishes that petitioner's guilty plea was knowing and voluntary. For these reasons, the § 2255 petition should be denied.

PROCEDURAL HISTORY

On April 17, 2008, a grand jury sitting in the Eastern District of New York returned an ninth superseding indictment in Criminal Docket No. 05-060 (NGG), charging the then-street boss of the Bonanno organized crime family of La Cosa Nostra (the "Bonanno family") Michael Mancuso, the former acting boss Vincent Basciano, and Bonanno family soldiers Anthony Indelicato, Anthony Aiello and Anthony Donato. Indelicato was charged with racketeering (Count One), including predicate acts of murder conspiracy and murder related to the 2001 murder of Frank Santoro (Racketeering Acts Two A and B), conspiracy to murder Patrick DeFilippo (Racketeering Act Four A), and marijuana distribution conspiracy (Racketeering Act Nine); racketeering conspiracy (Count Two); murder in aid of racketeering related to the Santoro homicide (Count Seven); and conspiracy to commit murder in aid of racketeering related to the Patrick DeFilippo murder plot (Count Nine).

On August 6, 2008, petitioner pled guilty to Count One of the 05-060 case pursuant to a plea agreement entered into under Federal Rule of Criminal Procedure 11; petitioner's allocution related to two predicate acts of racketeering, namely, Racketeering Acts Two A and Nine. The plea agreement set forth a guidelines range of imprisonment of 360 months' to life, but because of the 20-year statutory maximum sentence allowable as to

Count One, the applicable term of imprisonment specified in the plea agreement was 240 months. See Plea Agreement ¶ 2 (attached as Exhibit A). Pursuant to the terms of the plea agreement, petitioner stipulated that a sentence of 240 months was the appropriate sentence. See id. On December 16, 2008, the Court sentenced Indelicato to the exact sentence stipulated by the parties in his plea agreement, namely, 240 months. See Criminal Docket No. 05-060, Docket Entry No. 588. Indelicato did not appeal his sentence.

On November 16, 2009,[1] Indelicato filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("2255 Mot.").

## STATEMENT OF FACTS

Indelicato's principal claim on habeas relates to allegations concerning a government cooperating witness, Dominick Cicale (the "Cicale Allegations"). Specifically, Indelicato argues that the government's failure to disclose a letter from a different cooperating witness regarding the Cicale Allegations

---

[1] For purposes of this memorandum, the government assumes that the petition was forwarded to prison officials for mailing on November 16, 2009 as indicated in the petitioner's certificate of service and thus deems the petition filed on that date under the prison mailbox rule. See Houston v. Lack, 487 U.S. 266, 276 (1988). Since the judgment against petitioner was entered on December 29, 2008, Indelicato's petition appears to be timely. See Criminal Docket No. 05-060, Docket Entry No. 589.

3

constituted a Brady violation, which caused petitioner's guilty plea to be unintelligent and involuntary.  2255 Mot. at 5.

By way of background, on August 17, 2007, several weeks after the verdict against Vincent Basciano in United States v. Basciano, Criminal Docket No. 03-929, a cooperating witness in another matter unrelated to organized crime ("CW-1") made an allegation to an Assistant United States Attorney[2] that Cicale had propositioned CW-1 to falsely claim that Marco Santomaggio, a prison guard at the Metropolitan Correctional Center ("MCC"), asked CW-1 to kill Cicale on behalf of Basciano.  One of the documents that the government obtained during the investigation was a 7-page letter written by CW-1 (the "CW-1 Letter"), which set forth certain allegations against Cicale.

On November 13, 2007, the government filed a motion for a protective order with this Court seeking a prohibition on the dissemination of CW-1's name beyond defense counsel and the defendants, in addition to the Court's permission to not disclose the names of two inmates who were in the Witness Security Program.  The Court issued protective orders granting the relief

---

[2]   On August 15, 2007, two days before the government learned of the allegation, Basciano's defense attorneys submitted an ex parte letter to the Court advising the Court that, on August 13, 2007, Santomaggio had sua sponte communicated with Basciano at the MCC and that Santomaggio later met with Basciano's defense attorneys to inform them of the allegation. Basciano's letter, which was originally filed under seal, was unsealed and provided to the government in September 2007.

sought by the government on December 19 and 20, 2007, and, on January 2, 2008, pursuant to the Court's protective order, the government provided a letter to petitioner's counsel that contained a number of affidavits from Bureau of Prisons staff regarding the Cicale Allegations. See Gov't Ltr. dated Jan. 2, 2008 (filed as Exhibit B, under seal). The government provided further disclosures regarding the allegations in subsequent letters, dated February 15, 2008 and February 26, 2008. See Gov't Ltr. dated Feb. 15, 2008, Docket Entry No. 421 (Exhibit C); Gov't Ltr. dated Feb. 26, 2008, Docket Entry No. 428 (Exhibit D). On March 14, 2008, the government filed another motion for a protective order and sought the Court's inspection of certain materials, ex parte and in camera, including the CW-1 Letter. See Government's Motion for a Protective Order, March 14, 2008 (filed under seal).

On March 19, 2008, Indelicato's co-defendant, Michael Mancuso, submitted a number of pretrial motions, including a discovery request for information relating to the Cicale Allegations. Indelicato neither joined in his co-defendant's discovery motion, nor moved separately for additional discovery related to the Cicale Allegations. On April 29, 2008, the Government responded to the defendants' pretrial motions by reiterating that it had already complied with all discovery obligations by disclosing CW-1's name, the contact information

for CW-1's attorney, descriptions of the statements CW-1 claims Cicale made about the false murder plot, and affidavits of prison employees relating to the false murder plot allegations. See Government's Memorandum of Law in Response to Defendants' Pretrial Motions at 16 (Criminal Docket No. 05-060, Docket Entry No. 463). The Cicale Allegations were also discussed at length during oral argument on the pretrial motions, which was held before the Court on July 17, 2008. (Criminal Docket 05-060, Docket Entry Nos. 492, 494). Thus, by the time of his guilty plea in August 2008, the parties had already litigated the same discovery request that Indelicato now claims caused his plea to be not knowing and involuntary.

In addition, on March 24, 2008, the Court issued a written opinion denying a motion for a new trial filed by defendant Vincent Basciano. The government's response to Basciano's motion, dated March 7, 2008, set forth a detailed description of the Cicale Allegations as well as other evidence tending to impeach Cicale. See Criminal Docket No. 03-929, Docket No. 1054, Memorandum of Law in Opposition to Defendant Vincent Basciano's Omnibus Post-Trial Motion for a New Trial at 14-22. The Court's March 24, 2008 opinion contained a discussion of the Cicale Allegations and ultimately concluded, in the context of Basciano's prior trials, that the information regarding the Cicale Allegations provided by CW-1 was not

material.  See United States v. Basciano, 2008 WL 794945, at *1-2 (Mar. 24, 2008) (detailing the allegations against Cicale).

Accordingly, the record makes clear that, prior to petitioner's entry of a guilty plea on August 6, 2008, the substance of the Cicale Allegations was publicly known and substantial disclosures regarding the allegations were specifically provided to petitioner.

ARGUMENT

I.   Petitioner's Claims Are Procedurally Defaulted

   A.   Legal Standard

"[I]f a petitioner fails to assert a claim on direct review, he is barred from raising the claim in a subsequent § 2255 proceeding unless he can establish both cause for procedural default and actual prejudice resulting therefrom or that he is 'actually innocent' of the crime of which he was convicted."  DeJesus v. United States, 161 F.3d 99, 102 (2d Cir. 1998); see also United States v. Pipitone, 67 F.3d 34, 38 (2d Cir. 1995).

"'[C]ause . . . requires a showing of some external impediment preventing counsel from constructing or raising the claim.'"  McCleskey v. Zant, 499 U.S. 467, 497 (1991) (quoting Murray v. Carrier, [477 U.S. 478,] 492 (1986)) (emphasis added in McCleskey).  Unavailable evidence will not constitute cause "if

7

other known or discoverable evidence could have supported the claim in any event."  Id.

To demonstrate prejudice, the petitioner "shoulder[s] the burden of showing, not merely that the errors . . . created a <u>possibility</u> of prejudice, but that they worked to his <u>actual</u> and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982) (emphasis in original).  In the context of a guilty plea, a petitioner must "show that 'the violation affected substantial rights and that there was a reasonable probability that, but for the error, he would not have entered the plea.'" <u>Zhang v. United States</u>, 506 F.3d 162, 168 (2d Cir. 2007) (quoting <u>United States v. Vaval</u>, 404 F.3d 144, 151 (2d Cir. 2005)) (holding that petitioner did not overcome cause and prejudice standard as to claim that his guilty plea was involuntary because alleged misrepresentations by the Court, petitioner's counsel, and the government were neither misleading nor prejudicial).

   B.   <u>Analysis</u>

Petitioner's failure to raise his claim on direct appeal precludes him from doing so now.  As the Second Circuit has squarely held, a defendant's waiver of the right to appeal his conviction or sentence pursuant to a plea agreement does not constitute "cause."  See <u>Garcia-Santos v. United States</u>, 273 F.3d 506, 508 (2d Cir. 2001) (per curiam); <u>Pipitone</u>, 67 F.3d at 39.

8

In addition, petitioner's claim that the government withheld "favorable and material" impeachment evidence, 2255 Mot. at 5, cannot establish cause, because petitioner had access to all of the information contained in the CW-1 Letter. See McCleskey, 499 U.S. at 497. As discussed below, there was no substantive, material information contained in the CW-1 Letter that was not provided to petitioner prior to the entry of his guilty plea.

Moreover, the alleged withholding of evidence by the government could not have actually prejudiced petitioner because the information was not withheld. As set forth above, the government provided substantial disclosures to Indelicato that contained all of the information relevant to the Cicale Allegations; information regarding the Cicale Allegations was also publicly available in the Basciano opinion and filings. Indeed, as set forth above, Indelicato's co-defendants litigated matters relating to the Cicale Allegations and, at oral argument, articulated possible defenses that could be raised at trial based on the disclosures regarding the Cicale Allegations. On this record, Indelicato cannot make out a possibility of prejudice, much less actual prejudice.

Accordingly, the petition should be denied, as petitioner has procedurally defaulted as to his claim.

9

II. Petitioner Waived His Right to Challenge Collaterally His Conviction Pursuant to His Plea Agreement

    A. Applicable Plea Agreement Provisions

As set forth in the petitioner's 2255 Motion, the sentence he now challenges was imposed pursuant to a plea agreement in Criminal Docket No. 05-060 (NGG). As part of the agreement, Indelicato agreed as follows:

> The defendant further stipulates that a sentence of 240 months of imprisonment is the appropriate sentence, and that he will not in any way advocate a sentence below 240 months of imprisonment . . . .

Furthermore, the plea agreement pursuant to which petitioner pled guilty expressly provided:

> The defendant agrees not to file an appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the event that the Court imposes a term of imprisonment of 240 months or below. This waiver is binding without regard to the sentencing analysis used by the Court.

Plea Agreement at ¶¶ 2, 4. In addition, the plea agreement also provided that petitioner "waives any right to additional disclosure from the government in connection with the guilty plea." Plea Agreement at ¶ 4.

    B. Analysis

Because petitioner explicitly waived his right to collaterally challenge his conviction pursuant to the terms of

his August 6, 2008 plea agreement, his present challenge to his conviction must be denied.

As a general rule, courts are to "interpret plea agreements according to principles of contract law." United States v. Salcido-Contreras, 990 F.2d 51, 52 (2d Cir. 1993). In Pipitone, 67 F.3d at 39, for example, the Second Circuit expressly rejected a habeas petitioner's attempt to challenge his sentence of 63 months where he had agreed, pursuant to his plea agreement, not to challenge a sentence shorter than 78 months, noting that the court was "loathe to countenance so obvious a circumvention of a plea agreement." See also United States v. Hester, 589 F.3d 86, 94 (2d Cir. 2009) ("[P]ermitting an appeal from a defendant 'who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal' would 'render the plea bargaining process and the resulting agreement meaningless.'" (internal citations and quotations omitted)); Garcia-Santos v. United States, 273 F.3d 506, 509 (2d Cir. 2001) (per curiam) (affirming district court's denial of § 2255 petition on the ground that petitioner had waived right to attack his sentence collaterally pursuant to plea agreement); United States v. Rosa, 123 F.3d 94, 97 (2d Cir. 1997) ("[A] defendant's knowing and voluntary waiver of his right to appeal a sentence within an agreed guideline range is enforceable."); Lisnoff v. United States, 2006 WL 1367413, at *2

11

(E.D.N.Y. May 18, 2006) (holding that petitioner waived right to bring § 2255 petition because court imposed sentence less than the term agreed to in the plea agreement and therefore "trigger[ed] the waiver provision" in the plea agreement).

In this case, the record shows that Indelicato fully understood the terms of the waiver provision, and the Court imposed the exact term of imprisonment anticipated by the agreement -- thus triggering the waiver provision.  During Indelicato's plea colloquy, the Court thoroughly inquired as to whether petitioner understood that he had waived his right to appeal or otherwise challenge his conviction:

> Court:       The agreement letter says -
>              and I want to make sure that
>              you understand this -- that by
>              signing this agreement you
>              agree not to appeal or in any
>              other way challenge the
>              sentence that I impose upon
>              you if it is 240 months or
>              less. . . . Do you understand
>              that?
>
> Indelicato:  Yes, your Honor.
>
> Court:       All right.  Do you understand
>              that you have the right to
>              appeal only if I sentence you
>              to more than 240 months?
>
> Indelicato:  Yes, I do.
>
> Court:       You understand that even if
>              the sentence I give you is
>              more severe than what you may
>              be thinking or hoping you will
>              receive, you are still going
>              to be bound by your guilty

12

>   >   plea and not permitted to
>   >   withdraw it.  You will not be
>   >   able to challenge or appeal
>   >   that sentence as long as it is
>   >   240 months or less as we have
>   >   discussed.
>
> Indelicato: Yes, your Honor.

Tr. at 17-18 (Exhibit E).

This colloquy demonstrates that petitioner's waiver of his right to challenge his conviction and sentence in the event that he was sentenced to 240 months of imprisonment or less was knowing and voluntary.  See also infra Part III (addressing petitioner's claim that his plea was not knowing and voluntary).  Here, petitioner Indelicato, having obtained the benefits of pleading guilty pursuant to the terms of his plea agreement and having been sentenced to the exact term specified in the agreement, may not now challenge his conviction and sentence in light of his express waiver of his right to do so.  See Pipitone, 67 F.3d at 39.

Because Indelicato knowingly and voluntarily gave up the right to challenge his conviction and sentence pursuant to the express terms of his plea agreement, his petition must be denied.

III. Petitioner is Not Entitled to Relief Due to the Non-Disclosure of the CW-1 Letter Because Petitioner's Plea Was Knowing and Voluntary

Indelicato claims that the government's determination not to disclose the CW-1 letter made his guilty plea not knowing

13

and voluntary because of his inability to evaluate the CW-1 Letter in determining whether to plead guilty.  See 2255 Mot. at 5.  He argues that this non-disclosure caused Fifth and Sixth Amendment violations as it deprived him of due process and effective assistance of counsel by preventing his counsel from "assessing an alternative plausible strategic defense."  Id.

Petitioner asserts that by not disclosing the CW-1 Letter, the government failed to produce favorable and material evidence in violation of its obligations under Brady v. Maryland, 373 U.S. 83, 87 (1963) (holding prosecution's suppression of "evidence favorable to an accused upon request violates due process where evidence is material either to guilt or to punishment"), and that as a result, petitioner's plea was not knowing and voluntary.  See 2255 Mot. at 5.  The only withheld evidence on which petitioner bases his Brady claim is the CW-1 Letter.

Although the government did not disclose a copy of the CW-1 Letter to petitioner, it did disclose all material information contained in the CW-1 Letter prior to Indelicato's guilty plea.  The exact text of the CW-1 Letter thus constitutes cumulative impeachment material because the information available to the public and provided to Indelicato comprised more than ample disclosures regarding the Cicale Allegations. Specifically, the government provided Indelicato with affidavits

14

containing the following allegations that could be used to impeach Dominick Cicale:

- Cicale solicited CW-1 to falsely claim that Marco Santomaggio, a prison guard at the MCC, asked CW-1 to kill Cicale on behalf of Vincent Basciano.

- Cicale explained to CW-1 that the false murder plot could get CW-1 credit with the AUSAs and potentially a lower sentence.

- Cicale caused misconduct and gave orders to other Witsec inmates to create "mischief" in the unit, including "acts of murder sabotage, such as throwing water in the units [sic] cable box and pouring coffee all over the unit kitchen floor prior to inspection."

- CW-1 told supervisors at the MCC about Cicale's false murder plot, including Supervisory Officer Regina Eldridge, who advised other prison officers and Security Investigative Services of the matter.

- The government did not know of the false murder plot before August 2007.

See Gov't Ltr. dated Jan. 2, 2008 (filed as Exhibit B, under seal); United States v. Basciano, 2008 WL 794945, at *2. The CW-1 Letter contained the above impeachment information and no other material facts that would have provided Indelicato with information different in kind than that provided in the affidavits and the Basciano opinion summarizing the Cicale Allegations.[3] Accordingly, Indelicato has not articulated -- and

---

[3] In addition to the information set forth above pertaining to Cicale, the CW-1 letter included certain allegations regarding correctional officers with whom CW-1 had contact in prison. Those allegations do not constitute relevant impeachment evidence as to Cicale as they are not statements by Cicale and do not pertain to Cicale's credibility. Accordingly,

cannot articulate -- any reason why the government's disclosures regarding the impeachment material for the CW-1 were insufficient.  Thus, his claim must fail as to the alleged suppression of evidence and its impact on the knowing and voluntary nature of his plea.

     For the same reasons, petitioner's claim that the suppression of the CW-1 Letter led to a Sixth Amendment violation is also without merit.  Indelicato broadly asserts that his counsel could have developed "an alternative plausible strategic defense," 2255 Mot. at 5, had he been in possession of the CW-1 Letter.  As set forth above, however, Indelicato was privy to all material information in the CW-1 Letter and therefore did not suffer, and could not have suffered, a constitutional violation.

---

neither Brady nor Giglio required disclosure to Indelicato of the allegations in the letter regarding the correctional officers.

CONCLUSION

      For the reasons stated above, the Court should dismiss the petition or, in the alternative, deny it in its entirety.

Dated: Brooklyn, New York
      April 13, 2010

                                  Respectfully submitted,

                                  BENTON J. CAMPBELL
                                  United States Attorney
                                  Eastern District of New York
                                  271 Cadman Plaza East
                                  Brooklyn, New York 11201

Taryn A. Merkl
Nicole M. Argentieri
Assistant U.S. Attorneys
     (Of Counsel)

CERTIFICATE OF SERVICE

      I hereby certify that I caused a copy of the government's attached MEMORANDUM OF LAW to be served this day by U.S. mail on:

          Anthony Indelicato
          Prisoner No. 19706-054
          P.O. Box 2000
          F.C.I. Fort Dix
          5756 Hartford & Pointville Rd.
          Fort Dix, NJ 08640

          _____
          Nicole M. Argentieri
          Assistant U.S. Attorney
          (718) 254-6232

Dated: April 13, 2010